# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ROSEL C. HURLEY III, | ) Case No. 1:21-cv-01099 |
| Plaintiff, | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| NATIONAL BASKETBALL PLAYERS ASSOCIATION, et al., | ) |
| Defendants. | ) |

## DEFENDANT NATIONAL BASKETBALL PLAYERS ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO <u>COMPEL ARBITRATION AND DISMISS</u>

Frederick R. Nance (0008988)
fred.nance@squirepb.com
Sean L. McGrane (0091287)
sean.mcgrane@squirepb.com
Kristin L. Bryan (0095300)
kristin.bryan@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio  44114
Telephone: +1 216 479 8500
Facsimile: +1 216 479 8780

*Attorneys for Defendant*
*National Basketball Players Association*

I.  **INTRODUCTION**

Defendant National Basketball Players Association ("NBPA") rejected the application of Plaintiff Rosel C. Hurley III ("Plaintiff") to become a certified agent for players in the National Basketball Association ("NBA"). Among other reasons, the NBPA rejected the application because Plaintiff is a convicted felon who had his law license repeatedly suspended—most recently for "misrepresent[ing] his status as an Ohio lawyer in an attempt to mislead and intimidate small businesses into paying him money." Exhibit A, *Cleveland Metro. Bar Ass'n v. Hurley*, 152 Ohio St. 3d 536, 537 (Ohio 2018). Plaintiff's lawsuit purports to challenge the NBPA's rejection of his application to become an agent, but his claims fail for at least two reasons.

***First***, when Plaintiff submitted his application, he agreed to be bound by the NBPA's Regulations (the "Regulations") and applicable law. The Regulations require any challenge to the NBPA's decision to reject an application to be heard in arbitration, not in court. Accordingly, pursuant to the "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), the Court should compel Plaintiff to arbitrate his claims and dismiss his Complaint.

***Second***, even if the Court were to conclude that Plaintiff need not arbitrate his claims, the Complaint should still be dismissed under Rule 12(b)(6) because Plaintiff has failed to state any plausible claims for relief.

II.  **BACKGROUND**

    A.  **The NBPA and NBPA's Regulations governing Player Agents**

The NBPA "is a labor organization within the meaning of § 2 of the National Labor Relations Act (NLRA), 29 U.S.C. § 152." *Collins v. Basketball Players Ass'n*, 850 F. Supp. 1468, 1471 (D. Colo. 1991), *aff'd* 976 F.2d 740 (10th Cir. 1992). Pursuant to Section 9(a) of the NLRA,

29 U.S.C. § 159(a), the NBA recognizes the NBPA as "the exclusive bargaining representative for all professional basketball players employed by each of the NBA member teams." *Collins*, 850 F. Supp. at 1471. Given its status, the NBPA "is legally entitled to forbid *any* other person or organization from negotiating for its members" and has the "sole[]" discretion to determine "whether, to what extent and to whom to delegate [its exclusive] authority." *Id.* at 1475 (emphasis in original). Consistent with that role, the NBPA has delegated portions of its exclusive bargaining authority to certified Player Agents for purposes of negotiating individual NBA player contracts. *Id.* ("A union may delegate some of its exclusive representational authority on terms that serve union purposes, as the NBPA has done here. The decision whether, to what extent and to whom to delegate that authority lies solely with the union.").

Applications to operate as a certified Player Agent are governed by the Regulations—attached hereto as Exhibit B[1]—which are designed "[t]o afford each Player the opportunity to select a certified Player Agent who, in turn, has agreed to comply with these Regulations, to represent or advise Players as a fiduciary with honesty, competency and loyalty, and act consistent with the Player's membership in a collective bargaining unit." Ex. B, at 6; *see also id.* at 10-11, §2A (same).

The Regulations govern all aspects relating to Player Agents, including certification, conduct, discipline, and dispute resolution. They provide that "[t]o apply for certification as a Player Agent, an individual must complete the Application for Certification as an NBPA Player

---

[1] The NBPA may rely upon the Regulations, and other documents expressly cited or referenced in Plaintiff's Complaint: "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Long v. Sloan*, No. 18-CV-1364, 2019 U.S. Dist. LEXIS 119854, at *11-12 (N.D. Ohio May 23, 2019) (J. Nugent) (same).

Agent ('Application')" although "[t]he mere filing of the Application does not constitute certification of a Player Agent." *Id.* at §2A. Instead, the NBPA: **(1)** "review[s] each Application and performs a background investigation"; **(2)** may request from an applicant additional materials and information; and **(3)** requires that to be eligible for certification each applicant additionally "pass a written exam administered by the NBPA." *Id.*

Moreover, "[t]he signing and filing of an Application constitutes the applicant's agreement to comply with and be bound by these Regulations, including the exclusive arbitration remedy set forth in Section 5." *Id.* at §2A; *see also id.* at §§2C, 5 ("[t]he appeal to arbitration shall constitute the exclusive method of challenging any denial of certification"). For an appeal from a denial of certification, "such appeal must be initiated by filing a written notice of appeal by prepaid certified mail (or similar means such as Federal Express) and via email upon the NBPA and the Arbitrator within thirty (30) days of receipt of the notice denying his Application." *Id.* at §2C.

B.  **Factual background**

In August 2020, Plaintiff alleges that he "applied for the certification exam process in order to become a NBA Certified Agent." Compl., ¶6. His application, which "was completed on August 19, 2020," disclosed that Plaintiff's law license had been suspended without revealing the circumstances of that suspension. *Id.* A check of public records shows the suspension was based on a finding that Plaintiff "misrepresented his status as an Ohio lawyer in an attempt to mislead and intimidate small businesses into paying him money"—all while earlier suspensions remained in effect. Ex. A, 152 Ohio St. 3d at 537.[2] In his application, Plaintiff additionally failed to

---

[2] The *Cleveland Metro. Bar Ass'n* opinion states that Plaintiff also received an interim suspension in March 2013 after he was "convicted of multiple felonies for improperly using the Ohio Law Enforcement Gateway while employed by the Cuyahoga County prosecutor's office." Ex. A, 152 Ohio St. 3d at 537. Moreover, public records reveal that Plaintiff was additionally suspended in November 2013 based on a finding that Plaintiff "fail[ed] to register as an attorney for the 2013-2015 biennium." Exhibit C, *In re Admin. Actions*, 136 Ohio St. 3d 1544, 1545 (Ohio 2013). Plaintiff's law license was also suspended in April 2015 for

disclose—as required—that he had pled guilty to "aggravated menacing and telephone harassment," for threatening his ex-wife and ordered to pay a $5,000 fine. Ex. D, *Cleveland Metro. Bar Ass'n v. Hurley*, 143 Ohio St. 3d 69 (Ohio 2015).[3]

Plaintiff alleges that on February 10, 2021, he "was called by NBPA Personnel that he was being denied the ability to take the [NBPA Player Agent] exam" "because of the law licensing issue." Compl., ¶10. Plaintiff asserts that he requested "an appeal before an independent arbitrator." Ex. E, ¶12.[4] While Plaintiff emailed the NBPA requesting arbitration, *id.*, he did not initiate arbitration under the procedures set forth in the Regulations because he failed to **(1)** send an email to the NBPA arbitrator requesting arbitration and **(2)** serve written notice of appeal by prepaid certified mail or other similar means on the NBPA itself. Ex. B, §2C.[5] Despite the fact that Plaintiff failed to initiate arbitration under the Regulations, however, the NBPA has formally offered, and continues to offer, to extend the 30-day filing deadline and allow Plaintiff to proceed with his appeal before the independent arbitrator. Plaintiff refused.

Plaintiff commenced this litigation on May 27, 2021. He asserts claims against the NBA and the NBPA under the Sherman Act and FAA for his denial of certification, on the basis that

---

"conduct underlying his felony convictions and two unrelated misdemeanor convictions." Ex. A, 152 Ohio St. 3d at 537.

[3] Plaintiff's application also omitted a misdemeanor conviction for a hit and run where he fled the scene of the accident and was ordered to pay a $500 fine, probation and complete 50 hours of community service. *See* Henry J. Gomez, *Cleveland police officer gets probation, fine, community service for hit-and-run*, Cleveland.com, Feb. 15, 2020, *available at* https://www.cleveland.com/pdextra/2010/02/cleveland_police _officer_gets.html.

[4] The Complaint served on the NBPA is not the same document as that listed on the case docket at Dkt. #1, which omits paragraphs 11 and 12. For purposes of clarity and in the interests of an efficient resolution of this dispute, the NBPA attaches as Exhibit E the Complaint that was served on the NBPA and treats it as the operative pleading in this litigation.

[5] Plaintiff did not attach the arbitration request he purportedly sent by FedEx, or any records indicating that he actually sent a FedEx as required under the Regulations, which was not received by the NBPA.

Defendants "did not want the Plaintiff under any circumstances to take the NBA Agents Exam." Compl., ¶17.

## III. LEGAL STANDARD

In the context of a motion to compel arbitration, "the Sixth Circuit appears to have settled on a preference for analysis under Rule 12(b)(6), stating a party's 'failure to pursue arbitration in spite of a compulsory arbitration provision means that the party has failed to state a claim.'" *Rowe v. ZF N. Am., Inc.*, No. 3:20-cv-1296, 2021 U.S. Dist. LEXIS 133366, at *7-8 (N.D. Ohio July 19, 2021). Consistent with this approach, the court "must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). If the validity of the agreement to arbitrate is "not 'in issue,' [courts] must compel arbitration." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citing 9 U.S.C. § 4).

Additionally, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must proffer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bartlett v. Pfizer, Inc.*, No. 20-5322, 2020 U.S. App. LEXIS 38272, at *3 (6th Cir. Dec. 8, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Dipasquale v. Hawkins*, 748 F. App'x 688, 695 (6th Cir. 2018) (quoting *Ashcroft*, 556 U.S. at 678).

## IV. ARGUMENT

### A. The Court should compel arbitration under the NBPA Regulations and dismiss the Complaint on that basis.

It is well-established in the Sixth Circuit that courts analyze two primary issues in determining whether a party must submit a dispute to arbitration: **(1)** whether there is a valid arbitration agreement between the parties; and **(2)** whether the claims fall within the scope of the arbitration agreement. *Stout*, 228 F.3d at 714. The Supreme Court has instructed that "as a matter

of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Gesenhues v. Radial, Inc.*, No. 19-5932, 2020 U.S. App. LEXIS 9113, at *5 (6th Cir. Mar. 23, 2020) (same). Courts should compel arbitration absent "positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

It cannot credibly be disputed that the claims asserted by Plaintiff here are subject to mandatory arbitration under the Regulations. As described above and conceded in the Complaint, Plaintiff agreed to arbitration under the Regulations as "the exclusive method of challenging any denial of certification." Ex. B §2C; *see also* Compl., ¶13 ("[a]ny prospective agent whose application for certification is denied may appeal that denial by filing a timely demand for arbitration"). Plaintiff's claims fall within the broad scope of the arbitration agreement because they arise from the NBPA's denial of Plaintiff's application for certification to become a Player Agent. Compl., ¶¶ 6-14 (disputing the process used by the NBPA in denying plaintiff's application for certification). As such, Plaintiff's claims plainly are subject to arbitration. *See generally* Compl.; Ex. B, §2C.

Moreover, it is of no consequence that Plaintiff challenges the denial of his application for certification by raising federal antitrust claims. The U.S. Supreme Court has previously ordered arbitration of Sherman Act claims, as have other federal courts. *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 231 (2013) (ordering arbitration of plaintiffs' antitrust claims that were brought under the Sherman Act); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985) (ordering arbitration of Sherman Act claims and dismissing party's argument that "antitrust claims are nonarbitrable even though it has agreed to arbitrate them" upon

- 6 -

noting "the absence of any explicit support for such an exception in either the Sherman Act or the Federal Arbitration Act"); *In re Papa John's Emple. & Franchisee Emple. Antitrust Litig.*, No. 3:18-CV-00825-JHM, 2019 U.S. Dist. LEXIS 181298 (W.D. Ky. Oct. 21, 2019) (same).[6]

The same result should be reached here, particularly as the Supreme Court has cautioned that a court "should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." *United Steelworkers of Am.*, 363 U.S. at 585. Plaintiff asks the Court to rewrite the Regulations and otherwise directly interfere with the NBPA's limited delegation of its exclusive bargaining authority to certified Player Agents under the NLRA on the condition they comply with the Regulations. Ex. B, §2A. This request is without support, as the law is clear that as the exclusive bargaining representative of all NBA players, the NBPA has the "sole[]" discretion to determine "whether, to what extent and to whom to delegate" its exclusive bargaining authority. *Collins*, 850 F. Supp. at 1475.

Indeed, Plaintiff himself acknowledges that the claims are subject to arbitration, as he alleges that he requested to arbitrate his claims in a notice sent by FedEx to the NBPA on March 3, 2021. Ex. E, ¶12. The NBPA did not receive any such FedEx, and no evidence of such is attached to Plaintiff's complaint, but the NBPA is of course prepared to arbitrate this dispute and waive in this instance Plaintiff's non-compliance with the Regulations' requirements governing the initiation of arbitration.

---

[6] As discussed at *infra* §IV.B.2, the FAA does not have a private right of action and in any event, reflected the intent of Congress to have courts "'rigorously enforce' arbitration agreements". *Am. Express Co.*, 570 U.S. at 233. As such, even if such a claim existed it would still be subject to arbitration.

Because Plaintiff's claims must be arbitrated, the Complaint should be dismissed. *See Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (the "weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"); *Rowe*, 2021 U.S. Dist. LEXIS 133366, at *17 ("where 'all claims are referred to arbitration, a court may properly dismiss the complaint'") (quotation omitted).

### B. Alternatively, the Complaint should be dismissed for failure to state a claim.

#### 1. Plaintiff's Sherman Act claim fails.

Plaintiff alleges that the NBPA's denial of his application for certification constituted an unreasonable restraint on trade in violation of the Sherman Act, citing to the Regulations and Article XXXVI of the NBPA's collective bargaining agreement with the NBA (the "NBPA-NBA Agreement"). Compl., ¶¶15, 18. Plaintiff is incorrect. As another federal court explained in *Collins*:

> The NBPA Regulations and Article XXXI of the NBPA-NBA Agreement are exempt from antitrust law . . . Although the Regulations do limit agents' representational ability, the identified "market" for the representation of NBA basketball players in salary negotiations is explicitly precluded by the federal labor laws. Were that market not exempt from the Sherman Act, then all collective bargaining by labor unions would be a violation of the antitrust laws, because in all collective bargaining other potential bargaining agents are entirely excluded from the relevant market. As the exclusive representative for all of the NBA players, the NBPA is legally entitled to forbid any other person or organization from negotiating for its members. Its right to exclude all others is central to the federal labor policy embodied in the NLRA.

850 F. Supp. at 1471 (citing 29 U.S.C. § 159(a) and *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967)). In *Collins*, relying on this reasoning, the court rejected Sherman Act claims concerning plaintiff's denial of certification as a Player Agent. *See id.*

The district court's ruling was subsequently affirmed by the Tenth Circuit, which expressly adopted "the district court's analysis of the labor and antitrust statutes and its conclusion that the statutory labor exemption from the Sherman Act permits the NBPA to establish a certification

procedure for player agents." *Collins*, 1992 U.S. App. LEXIS 24069, at *5-6. This was because, the Tenth Circuit explained, "the Regulations meet both prongs of the test established in *United States v. Hutcheson*, 312 U.S. 219 (1941), in which the Supreme Court held that labor unions acting in their self-interest and not in combination with nonlabor groups are statutorily exempt from Sherman Act liability." *Id.* Here, the NBPA's conduct in implementing the NBPA Regulations satisfies the requirements for the statutory exemption to apply. *See Hutcheson*, 312 U.S. at 232.

Additionally, and as relevant for purposes of this litigation, the court in *Collins* rejected plaintiff's attack on his denial of certification to be a certified agent "because it was based in part on its finding that he had breached his fiduciary duty as an investment agent and money manager." *Id.* at *6. This was because:

> The NBPA established the Regulations to deal with agent abuses, including agents' violations of their fiduciary duties as labor negotiators. It was entirely fair for the Committee to conclude that a man who had neglected his fiduciary duties as an investment agent and money manager could not be trusted to fulfill his fiduciary duties as a negotiator. ***The integrity of a prospective negotiating agent is well within the NBPA's legitimate interest in maintaining the wage scale and working conditions of its members***.

*Id.* at *7 (emphasis supplied). The same reasoning applies here. *Id.* at *5-7; *see also Porter v. NFL Players Ass'n*, No. 19-13651, 2021 U.S. Dist. LEXIS 60089, *9-11 (E.D. Mich. Mar. 30, 2021) (rejecting claims brought by former certified Contract Advisor licensed by the National Football League Players Association as precluded by the NLRA).

Plaintiff's Sherman Act claim also fails because he does not plead the essential elements of Sherman Act claim, including an antitrust injury, which is a threshold requirement. Antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes [the defendant's] acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429

U.S. 477, 489 (1977); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc) ("[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law."). Additionally, the Sixth Circuit has held that "[t]o prove antitrust injury, the key inquiry is whether competition—not necessarily a competitor—suffered as a result of the challenged business practice." *CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 571-72 (6th Cir. 2009) (affirming dismissal of Sherman Act claims for failure to allege antitrust injury). Plaintiff, however, offers only the legal conclusion, couched as a factual allegation, that "Plaintiff's business has been injured by Defendants' anticompetitive actions in violation of Section 1 and 2 of the Sherman Act." Compl. ¶19. This allegation is inadequate under *CBC Cos.* to sustain Plaintiff's antitrust claims and necessitates their dismissal. 561 F.3d at 571-72.

### 2. Plaintiff has no claim under the FAA as the statute does not have a private right of action.

Plaintiff purports to assert a claim under the FAA. But the FAA does not create a private right of action or a substantive claim for relief—as countless federal courts have so held. *See, e.g.*, *Johnson v. NASD*, No. 95-4031, 1996 U.S. App. LEXIS 12371, at *2-3 (10th Cir. May 29, 1996) ("the FAA does not create a federal cause of action" and merely "provides a vehicle for enforcing a written arbitration agreement when an independent federal cause of action exists") (citing *Moses H. Cone Hospital*, 460 U.S. at 25 n.32); *McAllister v. Pepper*, No. 20-cv-00003-DKW-RT, 2020 U.S. Dist. LEXIS 4104, at *6-7 (D. Haw. Jan. 10, 2020) ("[t]he FAA does not establish a freestanding federal cause of action") (citation omitted); *Winter Constr. Co. v. Lamas Constructors, Inc.*, No. C87-1937A, 1987 U.S. Dist. LEXIS 14920, at *6-7 (N.D. Ga. Nov. 24, 1987) ("[t]he FAA does not create any independent federal cause of action.").

Rather, the FAA's "main purpose is 'to ensure that private agreements to arbitrate are enforced according to their terms." *Sherr v. Dell, Inc.*, No. 05-CV-10097, 2006 U.S. Dist. LEXIS 51864, at *20-21 (S.D.N.Y. July 27, 2006) (granting motion to compel arbitration) (quotation omitted); *see also* Margaret M. Maggio & Richard A. Bales, *Contracting Around the FAA: The Enforceability of Private Agreements to Expand Judicial Review of Arbitration Awards*, 18 OHIO ST. J. ON DISP. RESOL. 151, 161 (2002) ("[t]he FAA creates no new rights, but only provides a remedy to enforce an already existing arbitration agreement").

Plaintiff alleges that his "business has been injured" from the NBPA's violation of the FAA. Compl., ¶20. However, the NBPA respectfully submits that it is unaware of any instance in which a court has recognized that the FAA establishes an independent cause of action or rights that are enforceable outside the context of arbitration. The Court should decline Plaintiff's invitation to be the first to do so here. *See, e.g.*, *Johnson*, 1996 U.S. App. LEXIS 12371, at *2-3. This is particularly so as following the commencement of litigation, counsel for the NBPA repeatedly offered Plaintiff the opportunity to arbitrate his claims by October 2021 and Plaintiff refused. For this reason, Plaintiff's FAA claim fails and should be dismissed.

## V. CONCLUSION

The NBPA respectfully requests that the Court enter an Order granting this Motion, dismissing Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and providing the NBPA with any such other and further relief the Court deems just and proper under the circumstances.

Dated: September 10, 2021	Respectfully submitted,

*/s/ Sean L. McGrane*
Frederick R. Nance (0008988)
fred.nance@squirepb.com
Sean L. McGrane (0091287)
sean.mcgrane@squirepb.com
Kristin L. Bryan (0095300)
kristin.bryan@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: +1 216 479 8500
Facsimile: +1 216 479 8780

*Attorneys for Defendant*
*National Basketball Players Association*

**L.R. 7.1(F) CERTIFICATION**

I hereby certify that this Motion complies with the page count provision set forth in Local Rule 7.1(f) for standard litigations that have not been assigned an expedited track and does not exceed 20 pages in length.

                                         */s/ Sean L. McGrane*
                                         Sean L. McGrane (0091287)

                                         *Attorney for Defendant*
                                         *National Basketball Players Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2021, the foregoing document was electronically filed with the Clerk of the Court using the ECF system which will send notifications of such filing to all counsel of record.

                                         */s/ Sean L. McGrane*
                                         Sean L. McGrane (0091287)