IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSEL C. HURLEY III, | ) | CASE NO.   1:21 CV 1099 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| NATIONAL BASKETBALL PLAYERS | ) | |
| ASSOCIATION, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | |

This matter is before the Court on the Motion to Dismiss Plaintiff's Complaint filed by Defendant, National Basketball Association (Docket #14) and the Motion to Compel Arbitration and Dismiss filed by Defendant, National Basketball Players Association (Docket #15).

**I.  Factual and Procedural Background.**

On May 27, 2021, Plaintiff, Rosel C. Hurley III ("Mr. Hurley"), filed his Complaint in this case, *pro se*,[1] alleging Defendants violated the Sherman Act, 15 U.S.C. §§ 1, 2 ("Sherman

---

[1]   Although Mr. Hurley is proceeding *pro se*, he is, in fact an attorney practicing in the State of Ohio.  His pleadings, therefore, are not entitled to the liberal construction afforded to *pro se* litigants who are not trained in the law.  *Ponte v. Chase Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 155044 (E.D. Mich October 8, 2013 (citing *Sabeti v. Maron*, No. 12-2392, 2012 U.S. Dist. LEXIS 78082, *4 (E.D.N.Y. June 4, 2012) (practicing attorney's complaint not entitled to liberal pro se construction); *Foulke v. Va. State Police*, No. 12-00006, 2012 U.S. Dist. LEXIS 33816, *1 n.1 (W.D. Va. March 13, 2012) (active member of Virginia bar's complaint not entitled to extra measure of liberal

Act"), and the Federal Arbitration Act, 9 U.S.C. Chapter 1 ("FAA").[2]

This case stems from the National Basketball Players Association's ("NBPA") denial of Mr. Hurley's Application to become a certified Player Agent with the NBPA. The NBPA, a labor organization within the meaning of § 2 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152, is recognized by the National Basketball Association ("NBA") as "the exclusive bargaining representative for all professional basketball players employed by each of the NBA member teams." *Collins v. Nat'l Basketball Players Ass'n*, 850 F. Supp. 1468, 1471 (D. Colo. 1991), aff'd, No 92-1022, 1992 U.S. App. LEXIS 24069 (10th Cir. Colo. 1992). The NBPA has delegated portions of its exclusive bargaining authority to certified "Player Agents" for purposes of negotiating individual contracts. *Id.* at 1475. The NBPA "is legally entitled to forbid *any* other person or organization from negotiating for its members" and has the "sole[]" discretion to determine "whether, to what extent and to whom to delegate [its exclusive] authority." *Id.* at 1475 (emphasis in original).

The NBPA has established "Regulations Governing Player Agents" ("Regulations"), as referenced in Mr. Hurley's Complaint, and one of the primary objectives of said Regulations is to "afford each Player the opportunity to select a certified Player Agent who, in turn, has agreed to comply with these Regulations, to represent or advise Players as a fiduciary with honesty,

---

construction); *Zanke-Jodway v. Capital Consultants, Inc.*, No. 08-930, 2010 U.S. Dist. LEXIS 19137, *4, *23 (W.D. Mich. March 3, 2010) (attorney proceeding *pro se* is presumed to be aware of the rules of federal procedure)).

[2] The Complaint filed with the Court as Docket #1 is missing a page, omitting Paragraph 11 and the beginning of Paragraph 12, parts of which were referenced by Mr. Hurley in briefing. The NBPA attaches a complete copy of the Complaint to its Motion at Exhibit 15-6.

competency and loyalty, and act consistent with the Player's membership in a collective bargaining unit." (Docket #15-1, Exhibit B, Section A.) The Regulations govern all aspects of the relationship between the NBPA and its Player Agents, including certification, conduct, discipline, and dispute resolution.

In order to apply for certification as a Player Agent, a candidate must complete an Application for Certification as a Player Agent ("Application"). As set forth in § 2A of the Regulations, Applicants agree to comply with the Regulations upon signing and filing an Application:

> The signing and filing of an Application constitutes the applicant's agreement to comply with and to be bound by these Regulations, including the exclusive arbitration remedy set forth in Section 5, and that the failure to comply in any material respect with any provision of these Regulations shall constitute grounds for denial, revocation, or suspension of his certification or other disciplinary action.

(Regulations at § 2A.) Once an Application is filed, the NBPA reviews the Application and performs a background investigation; may request additional materials and information; and, requires each applicant to pass a written examination administered by the NBPA. (Id.)

Section 5 of the Regulations provides as follows with regard to disputes that may arise relative to the certification process, or from the "interpretation, application and enforcement" of the Regulations:

> In establishing this new system for regulating Player Agents it is the intention of the NBPA that the arbitration process shall be the exclusive method for resolving any and all disputes that may arise from denying certification to an applicant or from the interpretation, application or enforcement of these Regulations and the resulting SPACs between Player Agents and individual Players. This will ensure that those disputes – which involve essentially internal matters concerning the relationship between individual Players, the NBPA and its capacity as their exclusive bargaining representative, and Player Agents performing certain

delegated representative functions relating particularly to individual Player compensation negotiations – will be handled and resolved expeditiously by the decision-maker established herein, without need to resort to costly and time-consuming formal adjudication.

The provisions of this Section shall apply with respect to three types of disputes that may arise under these Regulations:

1. The NBPA denies an Application and the applicant wishes to appeal from that action;
2. A dispute arises with respect to the meaning, interpretation or enforcement of a SPAC (described in Section 4) entered into between a Player and the Player Agent; and
3. A dispute arises between two or more Player Agents with respect to their individual entitlement to fees owed, whether paid or unpaid, by a Player who was jointly represented by such Player Agents. In such cases, at the Player's option, any fees paid or payable by the Player after the dispute arises shall be placed in escrow pending final resolution of such dispute, and paid out of escrow in accordance with the Arbitrator's decision.

With respect to any dispute that may arise pursuant to paragraph (1) above, the procedure for filing an appeal and invoking arbitration is set forth in these Regulations in Section 2.D. Once arbitration has been invoked, the procedure set forth in subparagraphs D through F, below, shall apply. With respect to any dispute that may rise [sic] pursuant to paragraph (2-3) above, the following procedures shall apply . . .

(Regulations at § 5.)

On August 19, 2020, Mr. Hurley applied to take the online examination required to become a certified Player Agent. (Complaint at Paragraph 6.) In his Application, Mr. Hurley, an attorney, disclosed the fact that his law license was under suspension.[3] (Complaint at Paragraph 6.) On August 26, 2020, NBPA Director of Security, Eric Rhodes, forwarded Mr. Hurley a Background Questionnaire, which he completed and returned the same day. (Complaint at

---

3

    Mr. Hurley notes that a law license is not required to become a certified Player Agent.

Paragraph 7.) On September 4, 2020, Mr. Rhodes requested a detailed explanation regarding a bankruptcy discovered during the NBPA's background investigation of Mr. Hurley, and Mr. Hurley provided an explanation the same day. (Complaint at Paragraph 8.)

Mr. Hurley alleges that on December 2, 2020, he was informed by NBPA Legal Operations Manager Meagan Macchirole that "he was approved to take the on-line exam," but that later, on February 10, 2021, he "was called by NBPA Personnel" and told that he would not be permitted to take the February 12, 2021 due to the "law licensing issue" that he had originally disclosed in his Application. (Complaint at Paragraphs 9 and 10.)[4]

---

4

    The NBPA states that while Mr. Hurley disclosed his law license had been suspended, he did not reveal the circumstances of his suspension in his Application. In its Motion to Dismiss, the NBPA includes information obtained from public records regarding the circumstances precipitating the suspension of Mr. Hurley's law license, along with information regarding additional felony convictions and additional law license suspensions. (Docket #22.) Mr. Hurley responded in briefing that he disclosed his felony conviction and "other issues" at the beginning of the application process but that because his Application was completed and submitted online, he does not have his completed Application for reference. (Docket #22 at p. 3.)

    The NBPA explains, "A check of public records shows the suspension was based on a finding that Plaintiff "misrepresented his status as an Ohio lawyer in an attempt to mislead and intimidate small businesses into paying him money" – all while earlier suspensions remained in effect." (Docket #15-1 a p. 3, citing Exhibit A, 152 Ohio St. 3d at 537.) Further, the NBPA states, "In his application, Plaintiff additionally failed to disclose – as required – that he had pled guilty to "aggravated menacing and telephone harassment," for threatening his ex-wife and ordered to pay a $5,000 fine. (Docket #15-1 at p. 4, citing Ex. D., *Cleveland Metro Bar Ass'n v. Hurley*, 143 Ohio St. 3d 69 (Ohio 2015). In footnotes, the NBPA provides additional detail as follows:

    FN2 The Cleveland Metro. Bar Ass'n opinion states that Plaintiff also received an interim suspension in March 2013 after he was "convicted of multiple felonies for improperly using the Ohio Law Enforcement Gateway while employed by the Cuyahoga County prosecutor's office." Ex. A, 152 Ohio St. 3d at 537. Moreover, public records reveal that Plaintiff was additionally suspended in November 2013 based on a finding that Plaintiff fail[ed] to register as an attorney for the 2013-2015 biennium." Exhibit C, In re Admin. Actions, 136 Ohio St. 3d 1544, 1545

### A. The Complaint.

Mr. Hurley filed his Complaint in this case on May 27, 2021, challenging the denial of his Application and claiming he was wrongfully "denied access to the market of representing prospective and current NBA Basketball players" in violation of the Sherman Act. (Docket #23 at p. 3.) Mr. Hurley argues that the actions of the NBA and the NBPA "would cause a reasonable person to believe that the Defendants were acting in concert with and at the behest of a non-labor member or group [the NBA], in order to ensure the Plaintiff's exclusion from the marketplace the Defendants completely control" (Complaint at Paragraph 14), and states as follows:

> The defendants action show they did not want the Plaintiff under any circumstances to take the NBA Agents Exam considering the high possibility he would pass the exam since he has done so in the past. As such, this conduct constitutes a per se violation of Section 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1,2 without necessity of further proof, or alternately, under Rule of Reason analysis, conduct subject to treble damages.

(Complaint at Paragraph 17.) Mr. Hurley references the Collective Bargaining Agreement entered into between the NBPA and the NBA, alleging its provisions regarding Player Agents

---

> (Ohio 2013). Plaintiff's law license was also suspended in April 2015 for "conduct underlying his felony convictions and two unrelated misdemeanor convictions." Ex. A., 152 Ohio St. 3d at 537.
>
> FN3 Plaintiff's application also omitted a misdemeanor conviction for a hit and run where he fled the scene of the accident and was ordered to pay a $500 fine, probation and complete 50 hours of community service. See Henry J. Gomez, Cleveland police officer gets probation, fine, community service for hit-and-run, Cleveland.com, Feb. 15, 2020. (Citation omitted.)

demonstrate that the NBA benefitted from Defendants' "control [of] the market to represent prospective and current NBA professional basketball players."

Further, Mr. Hurley argues that pursuant to Sections 2D, 6E & F of the Regulations, and the protections set forth in the Federal Arbitration Act, 9 U.S.C. § 2 ("FAA"), he was entitled to arbitrate his dispute with the NBPA regarding its denial of his Application to sit for the certification exam.

### B. The NBA's Motion to Dismiss.

On September 10, 2021, the NBA filed its Motion to Dismiss Plaintiff's Complaint (Docket #14), arguing that the Complaint fails to allege the basic elements of an antitrust claim under Sections 1 and 2 of the Sherman Act, setting forth only conclusory allegations that fail to plead that the NBA took any illegal action, or was involved in any way in the events giving rise to this lawsuit. Further, the NBA argues that because Mr. Hurley's antitrust claims against the NBA rely on the NBA's Collective Bargaining Agreement with the National Basketball NBPA, his claims are barred under the nonstatutory labor exemption to antitrust laws. Finally, the NBA argues that Mr. Hurley has completely failed to allege a violation of the FAA, as there is no allegation that the NBA ever agreed to arbitrate claims with Mr. Hurley, "who is a complete stranger to the organization."

Mr. Hurley filed his Memorandum in Opposition to Dismiss on October 18, 2021. (Docket #23.) Mr. Hurley argues that the allegations set forth in the Complaint are sufficient to withstand dismissal at this stage of proceedings. Mr. Hurley argues that an agency relationship exists between the NBA and the NBPA relative to the certification of Player Agents and, therefore, that the NBA is liable for the actions of the NBPA, including violations of antitrust

laws. Mr. Hurley also argues that the NBA is vicariously or secondarily liable for the actions of the NBPA because of their relationship with one another. Finally, Mr. Hurley argues that the NBPA's Player Agent Regulations regarding certification restrict minority access to the certification process.

On November 1, 2021, the NBA filed its Reply Memorandum of Law. (Docket #25.) The NBA reiterates the arguments set forth in its Motion to Dismiss, noting that Mr. Hurley failed to comprehensively address the arguments raised by the NBA in its Motion to Dismiss, and argues that the various principles of agency and tort law discussed by Mr. Hurley have no application to the facts and circumstances in this case. The NBA argues that Mr. Hurley has not pled facts sufficient to state any claims against it whatsoever.

### C. NBPA's Motion to Compel Arbitration and Dismiss.

The NBPA filed its Motion to Dismiss on September 10, 2021. (Docket #15.) The NBPA argues that because Mr. Hurley concedes that he agreed to be bound by the NBPA Regulations and applicable law, his challenge to the NBPA's rejection of his Application must be arbitrated. The Arbitration Agreement in this case reads "any prospective agent whose application for certification is denied may appeal that denial by filing a timely demand for arbitration." NBPA Regulations, Section 2C. The NBPA argues that Mr. Hurley's Sherman Act claim falls within the scope of the Arbitration Agreement and, that despite Mr. Hurley's failure to provide notice in accordance with the notice provisions of Section 2C, the NBPA has formally offered, and continues to offer, to extend the 30-day filing deadline and allow Mr. Hurley to proceed with his appeal before an independent arbitrator, but he refuses.

The NBPA argues that even if Mr. Hurley is not required to arbitrate his claims, the

Court should dismiss his Complaint for failure to plead any cognizable claim for relief. Citing *Collins*, the NBPA argues that denial of certification as a Player Agent does not constitute an unreasonable restraint on trade under the Sherman Act, as labor unions acting in their self-interest and not in combination with nonlabor groups are statutorily exempt from Sherman Act liability. *Collins*, 1992 U.S. App. LEXIS 24069, at *6 (citing *States v. Hutcheson*, 312 U.S. 219, 232 (1941)). Further, the NBPA argues that Mr. Hurley failed to plead the essential elements of a Sherman Act claim – including the failure to allege an antitrust injury, a threshold to requirement to his claim. The NBPA references Paragraph 19 of Mr. Hurley's Complaint, in which he states that "[his] business has been injured by Defendants' anticompetitive actions in violation of Section 1 and 2," which the NBPA argues is inadequate to state an antitrust claim. Finally, the NBPA argues that the FAA does not create a private right of action or a substantive claim for relief and serves only to ensure private agreements to arbitrate are enforced according to their terms and, therefore, that Mr. Hurley's FAA claim fails to state a claim upon which relief can be granted.

On October 12, 2021, Mr. Hurley filed his Memorandum in Opposition to Compel Arbitration and Dismiss. (Docket #22.) Mr. Hurley states he "has no opposition to resolving the denial of [his] application for certification by arbitration" and "has always wanted to arbitrate the issue of denial of certification." (Id. at p. 2.) However, Mr. Hurley argues that the "limited Arbitration Agreement" listed in Section 5 of the NBPA Regulations does not encompass his Sherman Act claim and, therefore, that his Sherman Act claim should not be dismissed. (Id. at p. 4.) Mr. Hurley argues that NBPA is not statutorily exempt from antitrust laws and that "only through discovery can it be determined if there is a direct connection between the antitrust

violation and the alleged injury." Mr. Hurley argues that the actions of the NBPA were taken "at the behest of a non-union member [the NBA] and had an unreasonable effect on trade," thus constituting a *per se* violation of the Sherman Act.

On October 25, 2021, the NBPA filed a Reply Brief, in large part reiterating the arguments in favor of dismissal raised in its initial Motion.

During a telephone status conference, the Parties were given additional time to brief the impact, if any, the recent Sixth Circuit opinion in *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832 (6th Cir. Mich. 2021), may have on the resolution of the NBPA's Motion to the extent the NBPA seeks to compel arbtiration. Briefs were filed on December 3, 2021.

II.     **Standard of Review.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). It is with this standard in mind that the instant Motion must be decided.

### III. Discussion.

#### A. The Sherman Act.

Section 1 of the Sherman Act regulates concerted activity between two or more entities, outlawing "every contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States" and is limited to "unreasonable" restraints of trade. 15 U.S.C. § 1. To prevail on a claim under § 1, a plaintiff must prove: (1) a contract, combination, or conspiracy; (2) producing adverse, anticompetitive effects in the relevant product and geographic markets; (3) that the object of the scheme and the conduct resulting from it was illegal; and, (3) that the scheme was the proximate cause of the alleged antitrust injury. *See Expert Masonry, Inc. v. Boone Cty., Ky.*, 440 F.3d 336, 342 (6th Cir. Ky. 2006). Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. To bring a claim under § 2, a claimant must show "'(1) possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as

distinguished from growth or development as a consequence of a superior product, business acumen or historic accident.'" *Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 613 (6th Cir. Ky. 1993) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71, cert. denied, 512 U.S. 1221 (1994)).

"Antitrust laws were enacted to prevent restraints to free competition in business and commercial transactions that tend to restrict production, control prices or otherwise control the market to the detriment of consumers." *In re Detroit Auto Dealers Ass'n*, 955 F.2d 457 (6th Cir. Mich. 1992) (citing Apex *Hosiery Co. v. Leader*, 310 U.S. 469, 60 S. Ct. 982, 84 L.Ed. 1311 (1940)). "Congress provided a statutory labor exemption from the antitrust laws . . . demonstrat[ing] a congressional purpose to restrict the application of the antitrust laws when they unduly interfere with the goals of federal labor law." *Id.* (citing 15 U.S.C. §§ 17 and 26, 29 U.S.C. §§ 52, 104, 105 and 113; *Connell Construction Co., Inc. v. Plumbers & Steamfitters Local Unition No. 100*, 421 U.S. 616, 621 (1975)). "In resolving conflicts in areas where federal antitrust and labor policies seemingly overlap, the Supreme Court has recognized a nonstatutory labor exemption." *Id.*

As thoroughly analyzed by the Court in *Collins v. Nat'l Basketball Players Ass'n*, 850 F. Supp. 1468:

> The NBPA Regulations and Article XXXI of the NBPA-NBA Agreement are exempt from antitrust law. Collins claims that the limitation of the market for the representation of basketball players is an antitrust violation. Although the Regulations do limit agents' representational ability, the identified "market" for the representation of NBA basketball players in salary negotiations is explicitly precluded by the federal labor laws. Were that market not exempt from the Sherman Act, then all collective bargaining by labor unions would be a violation of the antitrust laws, because in all collective bargaining other potential bargaining agents are entirely excluded from the relevant market. As the

> exclusive representative for all of the NBA players, the NBPA is legally entitled to forbid any other person or organization from negotiating for its members. Its right to exclude all others is central to the federal labor policy embodied in the NLRA.

(*Collins*, 850 F. Supp. 1468, 1475 (citing *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967)). As succinctly stated by the Tenth Circuit Court of Appeals affirming the District Court's decision in *Collins*, "[t]he statutory labor exemption from the Sherman Act permits the NBPA to establish a certification procedure for player agents." *Collins*, 1992 U.S. App. LEXIS 24069, at *5-6. Further, "The nonstatutory exemption immunizes labor arrangements that are the ordinary implication of activities contemplated by the federal labor laws. *Collins*, 850 F. Supp. 1468, at *33 (citing 2 Antitrust Law P 229a, at 192)(nonstatutory exemption applies to preclude a claim that the collective bargaining agreement then in effect between the NBA and the NBPA violated antitrust laws in forbidding teams from negotiating with non-NBPA certified agents.)

Pursuant to the statutory and nonstatutory labor exemptions to antitrust laws, Mr. Hurley fails to state a claim under the Sherman Act against either the NBPA or the NBA.

2. **Failure to Plead the Elements of a Sherman Act Claim.**

In addition to the foregoing, Mr. Hurley has failed to plead the essential elements of a Sherman Act claim, including the threshold requirement of an antitrust injury. In order to prove an antitrust injury, "the key inquiry is whether competition – not necessarily a competitor – suffered as a result of the challenged business practice." *CBC Cos. v Equifax, Inc.*, 561 F.3d 569, 571-72 (6th Cir. Ohio 2009). A plaintiff must allege "anti-competitive effects resulting from [the defendant's] actions; absent injury to competition, injury to a plaintiff as a competitor will

not satisfy this pleading requirement." *Mizlou Television Network, Inc. v. Nat'l Broad. Co.*, 603 F. Supp. 677, 683 (D.D. C. 1984) (emphasis in original). "[A] plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990). Speculative injury and conclusory allegations regarding harm to the competition are insufficient. *CBC Cos.,* 561 F.3d 569, 572. District courts are required to dismiss claims under Rule 12(b)(6) when a plaintiff fails to satisfy antitrust standing. *NicSand, Inc. v. 3M NicSand, Inc.*, 507 F.3d 442, 450 (6th Cir. Ohio 2007).

In his Complaint, Mr. Hurley alleges that the NBPA, "acting in concert with and at the behest of" the NBA, wrongfully denied Mr. Hurley's Application to become a certified Player Agent, injuring his business. (Complaint at Paragraph 14.) Mr. Hurley states, "Plaintiff's business has been injured by Defendants' anticompetitive actions in violation of Section 1 and 2 of the Sherman Act." (Complaint at Paragraph 19.) In briefing, Mr. Hurley asserts that as a result of the denial of his Application, he was "denied the possibility to represent" a particular player during contract negotiations. (Docket #22 at p. 15.) Mr. Hurley does not allege injury to competition, but rather individualized injury. This is insufficient to establish antitrust standing.

Furthermore, Mr. Hurley has not pled a contract, combination, or conspiracy; producing adverse, anticompetitive effects in the relevant market; resulting in an antitrust injury – nor has he pled possession of monopoly power in the relevant market and the willful acquisition or maintenance of that power. There are no allegations whatsoever that anyone at the NBA did anything at all, let alone anything that could be construed as a Sherman Act violation, relative to any of the allegations set forth in the Complaint. Mr. Hurley states in a conclusory manner

-14-

that the NBA and the NBPA were acting in concert to ensure Mr. Hurley's exclusion from the marketplace, and in briefing includes discussion regarding principal-agent relationships; joint and several liability; vicarious and secondary liabilty; and, respondeat superior, none of which serve to bolster his Sherman Act claims. Mr. Hurley argues that "[o]nly through discovery can it be determined if there consisted of a conspiracy with a non-labor member to deny Plaintiff's approved application and access to the NBPA Agent Certification Exam knowing there was a good chance the Plaintiff would pass the exam since he passed it before, thus showing conduct arising to a per se violation of the Sherman Antitrust law." (Docket #22 at p. 10.) Again, this relates to the NBPA's decision to deny Mr. Hurley's application to become a Player Agent, individualized harm, and whether the denial was justified. Finally, Mr. Hurley has pled no facts in support of his conclusory statement set forth in briefing that the NBPA's Player Agent Regulations restrict minority access to the certification process.

Accordingly, even if not otherwise barred by the statutory labor exemption, Defendants are entitled to dismissal of Mr. Hurley's Sherman Act claims as he has failed to allege a Sherman Act violation.

### B. Federal Arbitration Act.

As set forth above, Mr. Hurley's Complaint fails to state a claim against Defendants under the Sherman Act. Thus, the question of whether Mr. Hurley's Sherman Act claim falls within the agreement to arbitrate set forth in the NBPA Regulations is moot. To the extent that Mr. Hurley challenges the propriety of the NBPA's denial of his Application to become a certified Player Agent, the NBPA and Mr. Hurley agree that the arbitration requirements set forth in the NBPA Regulations apply and, despite the fact that Mr. Hurley failed to comply with the procedures for invoking arbitration set forth in the Regulations, both appear willing to proceed to

arbitration on that issue. Accordingly, Defendants' Motions to Dismiss are granted with regard to Mr. Hurley's claim under the Federal Arbitration Act.

## IV. Conclusion.

For the foregoing reasons, the Motion to Dismiss Plaintiff's Complaint filed by the National Basketball Association (Docket #14) is hereby GRANTED.

The Motion to Compel Arbitration and Dismiss filed by the National Basketball Players Association (Docket #15) is hereby DENIED IN PART AND GRANTED IN PART.

Mr. Hurley's Sherman Act and Federal Arbitration Act claims against both the NBA and NBPA are hereby DISMISSED WITH PREJUDICE.

The NBPA's Motion to Compel Arbitration is hereby DENIED AS MOOT.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATED: December 22, 2021